IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Frank M. Burock, : 
              Petitioner : 
  : 
  : 
      v. : 
  : 
State Civil Service Commission : 
(Office of the Budget), :   No. 1865 C.D. 2019
            Respondent :   Submitted: November 13, 2020


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE P. KEVIN BROBSON, Judge[1]
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON        FILED: May 13, 2021


      Frank M. Burock (Burock), *pro se*, petitions for review of the November 21, 2019 order of the State Civil Service Commission (Commission) sustaining the decision of the Office of the Budget (Employer) to impose a level one alternative discipline in lieu of suspension (ADLS-1) from regular Accountant 3 employment with Employer's Executive Offices, and dismissing Burock's appeal therefrom. Upon review, we affirm.

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Brobson became President Judge.

## I. Background

Burock has worked for Employer as an Accountant 3 since 2012.[2] Comm'n Adj., 11/21/19 at 3, Finding of Fact (F.F.) 4, Supplemental Reproduced Record (S.R.R.) at 357b.[3] By signature dated April 6, 2017, Burock acknowledged receipt of Employer's job performance standards for his position. *Id.* In August 2017, Burock received an overall rating of "Needs Improvement" in an annual employee performance review (EPR). F.F. 6-7, S.R.R. at 357b-58b. The August 2017 EPR was retracted, and Burock subsequently received a Mid-Point Progress Review in September 2017, at which point biweekly meetings were initiated with Burock to discuss his work performance and to provide guidance. F.F. 8, S.R.R. at 358b. Burock then received an overall rating of "Unsatisfactory" in a January 2018 interim EPR. F.F. 10, S.R.R. at 359b. In February 2018, Burock received a written reprimand due to his failure to attain a satisfactory level of performance during the interim EPR period of August 30, 2017 to December 13, 2017. F.F. 12, S.R.R. at 360b. The reprimand advised him that "[f]urther acts of the same or a similar nature [would] lead to progressive disciplinary action up to and including removal." *Id.*

In February 2018, Burock received a performance improvement plan (PIP) from Paul Jones (Jones), his supervisor at the time, which provided that Burock had to meet specific standards in order to achieve satisfactory ratings in several specific job categories, as well as an overall satisfactory rating. F.F. 13-14, S.R.R.

---

[2] Burock avers he was terminated on June 19, 2019. *See* Burock's Brief at 14. The record does not contain any evidence concerning termination.

[3] We note that we have added the letter "b" following the page numbers in our citations to the supplemental reproduced record (S.R.R.), although Employer failed to do so in accordance with Pennsylvania Rule of Appellate Procedure 2173. *See* Pa.R.A.P. 2173 (providing that pages of the S.R.R. shall be numbered separately in Arabic figures followed by a small letter "b").

at 360b-61b.  The February 2018 PIP also provided for interim evaluations about every 60 days and cautioned that progressive discipline, up to and including removal from employment, could occur if satisfactory ratings were not achieved.  F.F. 14, S.R.R. at 361b.

The February 2018 PIP also provided for weekly meetings to review and discuss Burock's progress.  F.F. 15, S.R.R. at 361b.  Participants at the weekly meetings included Michelle Baker (Baker), a county manager and Burock's immediate supervisor; Andy Cameron (Cameron), Assistant Director of the General Accounting Division of the Office of Comptroller Operations, who served as Burock's second-level supervisor; and, on occasion, Jamie Jerosky (Jerosky), an administrative officer with Employer who supervised Burock.  F.F. 11 & 16, S.R.R. at 359b & 361b-62b; *see also* Transcript of Testimony (T.T.) 9/25/18 at 19, 103-04 & 151, S.R.R. at 20b, 104b-05b & 152b.

In July 2018, Burock received an interim EPR examining his job performance from February 21, 2018 to May 31, 2018 (rating period), based on performance standards provided in the February 2018 PIP.  F.F. 17, S.R.R. at 362b. Burock received a rating of "Unsatisfactory" in the individual categories of "Job Knowledge/Skills," "Work Results," "Communications" and "Initiative/Problem Solving"; a rating of "Needs Improvement" in the individual categories of "Interpersonal Relations/[Equal Employment Opportunity]" and "Work Habits"; and an overall rating of "Unsatisfactory."  F.F. 18, S.R.R. at 362b; Comm'n Adj., 11/21/19 at 19, S.R.R. at 373b.  In July 2018, Employer imposed an ADLS-1 due to Burock's unsatisfactory performance during the rating period.  Comm'n Adj,

3

11/21/19 at 2, F.F. 1-2, S.R.R. at 356b. Burock appealed Employer's disciplinary action to the Commission. *See* T.T., 9/25/18 at 8, S.R.R. at 9b.[4]

In September 2018, the Commission conducted a hearing in which both Burock and Employer participated. Transcript of Testimony (T.T.), 9/25/18 at 1, S.R.R. at 2b. Employer offered the testimony of Jerosky, Cameron and Baker. Comm'n Adj., 11/21/19 at 9 & 12, S.R.R. at 363b & 366b (citing T.T., 9/25/18 at 19, 103-04 & 151, S.R.R. at 20b, 104b-05b & 152b).

Jerosky testified that Burock's duties included reviewing accounting processes for accuracy. Comm'n Adj., 11/21/19 at 10, S.R.R. at 364b (citing T.T., 9/25/18 at 29, S.R.R. at 30b). Agencies rely on the information contained in financial statements, and inaccuracies create the potential for an agency to overspend or underspend. *See* Comm'n Adj., 11/21/19 at 10-11, S.R.R. at 364b-65b (citing

---

[4] Section 951(a) of the former Civil Service Act of 1941 (Civil Service Act), applicable during the time period at issue here, permitted any regular employee in the classified service to appeal to the Commission within 20 calendar days of receipt of notice from the appointing authority of certain forms of disciplinary action, including suspension for cause, "on the grounds that such action has been taken in his case in violation of the provisions of this act . . . ." Section 951(a) of the *former* Civil Service Act, Act of August 5, 1941, P.L. 752, No. 286, *as amended*, added by the Act of August 27, 1963, P.L. 1257, 71 P.S. § 741.951(a). Section 951(b) of the former Civil Service Act also governed Burock's appeal to the extent he alleged discrimination in violation of former Section 905.1 of the Civil Service Act. *See former* 71 P.S. § 741.951(b).

Effective March 28, 2019, the Act of June 28, 2018, P.L. 460, No. 71 (Act 71), repealed and replaced the Civil Service Act. "The purpose of [Act 71] is to create and sustain a modern merit system of employment within the Commonwealth workforce that promotes the hiring, retention and promotion of highly qualified individuals, ensuring that government services are efficiently and effectively delivered to the public." 71 Pa.C.S. § 2102. Further, "the amendments in Act 71 . . . are not intended to change or affect the legislative intent, judicial construction or administration and implementation of the Civil Service Act." 49 Pa.B. 1297 (2019) (Civil Service Reform), available at http://www.pacodeandbulletin.gov/Display/pabull?file=/secure/pabulletin/data/vol49/49-11/414.html#:~:text=Effective%20March%2028%2C%202019%2C%20the,of%20August%205%2C%201941%20(P.L.&text=The%20adoption%20of%20temporary%20regulations,769%2C%20No (last visited May 12, 2021).

T.T., 9/25/18 at 51, S.R.R. at 52b). Jerosky testified that Burock had failed to meet Employer's job performance standards since August 2017. *Id.* (citing T.T., 9/25/18 at 39, 45, S.R.R. at 40b, 46b). Jerosky stated that Burock's "lack of basic knowledge of the reconciliation[5] process" caused him to erroneously delete necessary information, thereby compromising the accuracy of reconciliations for the following month. T.T., 9/25/18 at 52, S.R.R. at 53b. Jerosky attested that "[w]e would verbally explain this process again to him," but that "the understanding was [not] there," even though Burock had been doing reconciliations since 2012. Comm'n Adj., 11/21/19 at 11, S.R.R. at 365b (quoting T.T., 9/25/18 at 52, S.R.R. at 53b). Burock struggled to reconcile differences in financial statements between "outside investment agency mail-ins" and Employer's accounting records, even though procedures had not changed in years. *Id.* (quoting T.T., 9/25/18 at 53, S.R.R. at 54b). Further, Burock experienced "issues with the accrual methodologies utilized to prepare financial statements," and although Employer did "make a change in the accrual methodology," Burock "didn't seem to understand the change at all." *Id.* Jerosky testified Burock's recurring mistakes were not minor, nor were they expected of someone employed as an Accountant 3, a senior-level accountant. *Id.* (citing T.T., 9/25/18 at 53-54, S.R.R. at 54b-55b).

On cross-examination, Jerosky acknowledged that the financial statements he had reviewed "were done consistently with how they were done in the past" and had been previously accepted using the same process; however, Jones's subsequent review of these statements gave rise to "numerous questions," as he

---

[5] Jerosky explained that treasury reconciliations involve matching "our accounting books . . . up to treasury accounting books . . . to verify that the systems both align." T.T., 9/25/18 at 28, S.R.R. at 29b.

"pointed out different aspects that were lacking[.]" *See* Comm'n Adj., 11/21/19 at 12, S.R.R. at 366b (quoting T.T., 9/25/18 at 73-74, S.R.R. at 74b-75b).

Cameron testified that he tasked Burock with preparation of a "statement of funds available" (also referred to as an "SFA"),[6] an assignment which he viewed as typical for an Accountant 3. Comm'n Adj., 11/21/19 at 12, S.R.R. at 366b (quoting T.T., 9/25/18 at 106-07, S.R.R. at 107b-08b). Cameron assisted Burock by providing him with a copy of a similar statement, which had been prepared by an Accountant 2. *Id.* (citing T.T., 9/25/18 at 107-08, S.R.R. at 108b-09b). Cameron testified that Burock's work product was unsatisfactory, as "it contained a $5 million plug[7] to get to the ending cash and investment balance." Comm'n Adj., 11/21/19 at 12-13, S.R.R. at 366b-67b (citing T.T., 9/25/18 at 108, S.R.R. at 109b). Cameron testified that although he provided "direction" during weekly meetings and simplified the process by instructing Burock to "just focus on the treasury balance," Burock's attempt to rectify the SFA was nevertheless "unsatisfactory," as it included a "plug" of $1.3 million—a material amount for the indemnification fund at issue. *Id.* (citing T.T., 9/25/18 at 112-14, S.R.R. at 113b-15b). Cameron further attested that Burock had improperly included accruals in cash flow statements. Comm'n Adj., 11/21/19 at 13, S.R.R. at 367b (citing T.T., 9/25/18

---

[6] Cameron attested that an SFA "is essentially a cash flow statement where you start with the beginning cash investment balance for a period," and that "you account for the activity, coming to the ending cash investment balance for [] the period of the report." Comm'n Adj., 11/21/19 at 12, S.R.R. at 366b (citing T.T., 9/25/18 at 106, S.R.R. at 107b).

[7] The use of "plugs" is the dubious practice of utilizing a number to reach the correct final balance of cash investments when an employee cannot "account for everything . . . ." T.T., 9/25/18 at 113, S.R.R. at 114b. Cameron testified that he expressed concern to Burock regarding his use of a plug. *See* T.T., 9/25/18 at 117-18, S.R.R. at 118b-19b.

6

at 109, S.R.R. at 110b).[8] Cameron stated that Burock's job performance "showed a lack of understanding and actual problem-solving abilities," and that he would have expected Burock, an Accountant 3 as well as a [certified public accountant (CPA)] with more than 30 years' experience, to be able to prepare an SFA, which is "essentially a cash flow statement." *Id.* (quoting T.T., 9/25/18 at 114-15, S.R.R. at 115b-16b). Cameron testified that he discussed Burock's failure to demonstrate any improvement during the rating period and the resulting decision to impose the ADLS-1 with Jerosky and Baker. *Id.* (citing T.T., 9/25/18 at 119-20, S.R.R. at 120b-21b). Comm'n Adj., 11/21/19 at 14-15, S.R.R. at 368b-69b (citing T.T., 9/25/18 at 123, S.R.R. at 124b). Cameron opined that Burock failed to perform at the level expected of an Accountant 3. *See* Comm'n Adj., 11/21/19 at 13, S.R.R. at 367b (citing T.T., 9/25/18 at 111, S.R.R. at 112b).

Baker testified that the purpose of the weekly meetings with Burock was to assist him in attaining a satisfactory job performance rating, and that Burock received "very clear" notice of Employer's expectations through review of prior unsatisfactory ratings and receipt of suggestions for improvement. Comm'n Adj., 11/21/19 at 15-16, S.R.R. at 370b (citing T.T., 9/25/18 at 160-62, S.R.R. at 161b-63b). Baker attested that Burock exhibited "lack of understanding on an Accountant 3 level" as well as an "inability to really analyze data." Comm'n Adj., 11/21/19 at 16, S.R.R. at 370b (citing T.T., 9/25/18 at 162-63, S.R.R. at 163b-64b). Baker attested that as an Accountant 3 with roughly six years' experience working for the Commonwealth, Burock should have been able to handle these types of tasks. *Id.* (citing T.T., 9/25/18 at 163, S.R.R. at 164b). With respect to Burock's "Unsatisfactory" ratings in various EPR categories, Baker testified that Burock

---

[8] Cameron testified that accruals "are basically expenses that [] have not [been] paid yet[.]" Comm'n Adj., 11/21/19 at 13, S.R.R. at 367b (citing T.T., 9/25/18 at 109, S.R.R. at 110b).

failed to exhibit the independence expected of an Accountant 3 or to analyze, review or understand his own work; submitted untimely work statements, misnamed files, failed to complete checklists, and neglected to update time periods and references in financial statements; failed to document steps taken to update old account reconciliations; did not adapt well to change; referenced outdated information in financial statements; failed to remove lines from financial workups following program changes; and was unable to independently revise spreadsheets without "strong guidance." Comm'n Adj., 11/21/19 at 16-18, S.R.R. at 370b-72b (citing T.T., 9/25/18 at 168-71, S.R.R. at 169b-72b).

Concerning Burock's ratings of "Needs Improvement" in other EPR categories, Baker explained that Burock was not amenable to constructive criticism and had to be reminded repeatedly to implement changes in processes. *See* Comm'n Adj., 11/21/19 at 19, S.R.R. at 373b (citing T.T., 9/25/18 at 171-73, S.R.R. at 172b-74b). Regarding Burock's overall rating of "Unsatisfactory," Baker referenced Burock's failure to function as a "team leader" or suggest ideas for improvement, as would be expected of an Accountant 3, and noted that Burock in fact sought guidance from a subordinate accountant. *See* Comm'n Adj., 11/21/19 at 19-20, S.R.R. at 373b-74b (citing T.T., 9/25/18 at 171-73, S.R.R. at 172b-74b). Baker attested that she bears no personal animosity toward Burock and that she based her decision to impose the challenged ADLS-1 solely on her observations of Burock's failure to satisfactorily perform his job duties. Comm'n Adj., 11/21/19 at 20, S.R.R. at 374b (citing T.T., 9/25/18 at 177-78, S.R.R. at 178b-79b).

Burock, on his own behalf, testified that after receiving an initial probationary EPR in December 2012, he did not receive another until August 2017. Comm'n Adj., 11/21/19 at 20, S.R.R. at 374b (citing T.T., 9/25/18 at 205, S.R.R. at

206b). Burock attested that "the person who did the [2017] EPR" informed him that Brian Seno (Seno), Employer's assistant director for general accounting who oversaw all employees in Burock's section, "forced [her] to do it on her last day," that she "disagreed with it," and that she "refused to sign it." *Id.* (citing T.T., 9/25/18 at 205, S.R.R. at 206b; *see also* T.T., 9/25/18 at 25, S.R.R. at 26a). Burock theorized that Seno influenced his unfavorable 2017 EPR after learning of his interview for another position. *See id.* (citing T.T., 9/25/18 at 205, S.R.R. at 206b). Burock testified that the August 2017 EPR was retracted, but he was then subjected to an unfavorable mid-point progress review. *Id.* (citing T.T., 9/25/18 at 205, S.R.R. at 206b). *See* Comm'n Adj., 11/21/19 at 21, S.R.R. at 375b (citing T.T., 9/25/18 at 206-07, S.R.R. at 207b-08b). Burock also testified that employees were leaving because of Seno, that by the end of 2016 he and one other employee had to bear the workload of five employees and that Seno refused to redistribute the workload or to permit overtime. *See* Comm'n Adj., 11/21/19 at 22, S.R.R. at 376b (citing T.T., 9/25/18 at 208, S.R.R. at 209b). Further, Burock attested that one of his superiors, Director Mike Burns, "put some edict down that they want[ed] to get rid of [Burock] eventually." *See id.* (citing T.T., 9/25/18 at 209, S.R.R. at 210b); *see also* T.T., 9/25/18 at 84, S.R.R. at 85a. Burock explained that the "crux" of his claim is that "Seno initiated" his unfavorable ratings. *See* Comm'n Adj., 11/21/19 at 22, S.R.R. at 376b (citing T.T., 9/25/18 at 211, S.R.R. at 212b).

Burock offered the testimony of Tammy Miller (Miller), who worked as an administrative officer with Employer from 2001 to 2018. *See* Comm'n Adj., 11/21/19 at 23, S.R.R. at 377b; see also T.T., 9/25/18 at 231-33, S.R.R. at 232b-34b. Miller testified that Seno was her immediate supervisor for two years, and that she left employment with the appointing authority due to "issues" between them. *Id.*

9

(citing T.T., 9/25/18 at 236-37, S.R.R. at 236b-37b). Miller had not been supervised or managed by Baker, Cameron or Jerosky. Comm'n Adj., 11/21/19 at 24, S.R.R. at 378b (citing T.T., 9/25/18 at 248-49, S.R.R. at 249b-50b).

Burock also offered the testimony of Miriam Millan-Heffner (Millan-Heffner), who worked for Employer until 2009. *See* Comm'n Adj., 11/21/19 at 24, S.R.R. at 378b; T.T., 9/25/18 at 254, 257, S.R.R. at 255b, 258b). Millan-Heffner testified that Seno created a hostile work environment that was "very inappropriate and unprofessional," and that the work environment fostered by Seno "[was] why [she] left." *See id.* (quoting T.T., 9/25/18 at 259, S.R.R. at 260b). Millan-Heffner further testified that her treatment under Seno was similar to that experienced by Burock. *See id.* (citing T.T., 9/25/18 at 265-66, S.R.R. at 266b-67b).

When recalled for further questioning, Jerosky testified Seno has a reputation for providing "very strong, opinionated constructive criticism" to his subordinates, but that Seno did not foster a hostile work environment. Comm'n Adj., 11/21/19 at 27, S.R.R. at 381b (citing T.T., 9/25/18 at 326, S.R.R. at 327b).

In its adjudication mailed November 21, 2019, the Commission identified the issues on appeal as whether Employer had good cause under the Civil Service Act of 1941 (Civil Service Act) to impose the ADLS-1 upon Burock, and whether Employer's disciplinary action was motivated by discrimination.[9] Comm'n

---

[9] Section 905.1 of the former Civil Service Act provided:

> No officer or employe of the Commonwealth shall discriminate against any person in recruitment, examination, appointment, training, promotion, retention or any other personnel action with respect to the classified service because of political or religious opinions or affiliations because of labor union affiliations or because of race, national origin or other non-merit factors.

Added by the Act of August 27, 1963, P.L. 1257, *former* 71 P.S. § 741.905a.

10

Adj., 11/21/19 at 1-2, S.R.R. at 355b-56b (citing Section 803 of the Civil Service Act, *former* 71 P.S. § 741.803; 4 Pa. Code § 101.21).[10]  After fully reviewing the testimony, the exhibits introduced at the hearing, and all other party submissions, the Commission concluded that Employer established good cause to impose the ADLS-1 upon Burock.  Comm'n Adj., 11/21/19 at 1, 27 & 31, S.R.R. at 355b, 381b & 385b.  The Commission observed that the written notice received by Burock based the challenged ADLS-1 solely upon his unsatisfactory performance during the July 2018 interim EPR.  Citing Baker's testimony explaining Burock's July 2018 interim EPR ratings, as well as testimony of Baker and Cameron regarding weekly meetings with Burock, the Commission determined that Burock "clearly knew his work performance needed to improve throughout the ratings period."  Comm'n Adj., 11/21/19 at 28, S.R.R. at 382b.  The Commission also found the testimony of Baker and Cameron established that Burock's performance failed to improve during the ratings period.  *Id.*

---

[10] Section 803 of the Civil Service Act provided, in relevant part:

> An appointing authority may for good cause suspend without pay for disciplinary purposes an employe holding a position in the classified service. Suspensions, including suspensions pending internal investigation, shall not exceed sixty working days in one calendar year; however, suspensions pending investigation by external agencies may be maintained up to thirty working days after conclusion of the external investigation. No person shall be suspended because of race, gender, religion or political, partisan or labor union affiliation. What shall constitute good cause for suspension may be stated in the rules.

*Former* 71 P.S. § 741.803, repealed by the Act of June 28, 2018, P.L. 460, No. 71, § 2, effective March 28, 2019.  Section 3(e) of the Civil Service Act defined the term "appointing authority" to include "the officers, board, commission, person or group of persons having power by law to make appointments in the classified service." *Former* 71 P.S. § 741.3(e) (amended by the Act of June 28, 2018, P.L. 460, No. 71, § 2, effective March 28, 2019).

The Commission determined that e-mails offered by Burock at the hearing did not substantially contradict Employer's determination that his job performance was inadequate. Comm'n Adj., 11/21/19 at 29, S.R.R. at 383b. Moreover, the Commission reasoned that even if it were to accept Burock's claim that the proffered e-mails supported satisfactory completion of work, these e-mails did not account for the entirety of Burock's work product during the rating period. *Id.* The Commission noted that Burock failed to introduce evidence regarding his workload during the rating period. *Id.* The Commission therefore concluded that Employer presented credible evidence establishing good cause to impose the ADLS-1 upon Burock pursuant to Section 803 of the Civil Service Act. Comm'n Adj., 11/21/19 at 28-29 & 31, S.R.R. at 382b-83b & 385b.[11]

The Commission also rejected Burock's allegation that Employer engaged in gender-based discrimination by permitting a female co-worker to spend an average of two hours on the telephone each day for six months, concluding he failed to present any evidence in support of his claim. Comm'n Adj., 11/21/19 at 30, S.R.R. at 384b. Thus, the Commission sustained Employer's imposition of the

---

[11] Section 105.15(a) of the Commission's regulations provides as follows:

> The appointing authority shall go forward to establish the charge or charges on which the personnel action was based. If, at the conclusion of its presentation, the appointing authority has, in the opinion of the Commission, established a prima facie case, the employee shall then be afforded the opportunity of presenting his case.

4 Pa. Code § 105.15(a).

12

July 2018 ADLS-1[12] and dismissed Burock's appeal. *Id.* Burock thereafter petitioned this Court for review.

## II. Discussion

### A. The Parties' Arguments

On appeal,[13] Burock requests that this Court reverse the Commission's November 21, 2019 order, asserting that the Commission erred in determining that Employer established good cause to impose the July 2018 ADLS-1. Burock's Brief at 11 & 15.[14] Burock contends that the Commission failed to give proper weight to

---

[12] The Commission noted that Burock received written notice advising him that while not affecting his pay, seniority or other benefits, the ADLS-1 carried the same weight as a one-day disciplinary suspension. Comm'n Adj., 11/21/19 at 1 n.1, S.R.R. at 355a. Thus, the Commission explained that the ADLS-1 would be the equivalent of and treated as a suspension imposed under Section 803 of the Civil Service Act for purposes of the hearing. *Id.* (citing *former* 71 P.S. § 741.803; *Shade v. Pa. State Civ. Serv. Comm'n (Pa. Dep't of Transp.)*, 749 A.2d 1054 (Pa. Cmwlth. 2000)).

[13] Our scope of review of a determination of the Commission is limited to determining whether constitutional rights have been violated, whether an error of law has been committed and whether necessary findings of fact are supported by substantial evidence. *Williams v. State Civ. Serv. Comm'n (State Corr. Inst. at Pine Grove)*, 811 A.2d 1090, 1092 n.1 (Pa. Cmwlth. 2002); *see also* Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704. "[A] court reviewing the penalty imposed on an employee [within the framework of the Civil Service Act] is not to substitute its determination for that of the employer. Rather, the court is merely to make certain that just cause exists and that the appointing authority did not abuse its discretion." *Zuckerkandel v. Dep't of Pub. Welfare*, 415 A.2d 1010, 1011 (Pa. Cmwlth. 1980).

[14] Burock further "requests that a follow up case, 81 C.D. 2020[,] . . . be reversed and nullified as all of these disciplines have the same Office of the Budget biases . . . running through them." Burock's Brief at 15. The claims levied by Burock in his separate petition for review docketed at 81 C.D. 20 are not before us here. Burock also requests the reversal of an ADLS-2 suspension and a termination. *See id.* However, Burock failed to challenge these disciplinary actions either before the Commission or in his petition for review. Thus, they are waived. *See Walton v. Unemployment Comp. Bd. of Rev.*, 797 A.2d 437, 438-39 (Pa. Cmwlth. 2002) (claimant waived claim not included in petition for review); *see also* Section 703(a) of the Administrative Agency Law, 2 Pa.C.S. § 703(a) (a "party may not raise upon appeal any other question not raised before the agency . . . unless allowed by the court upon due cause shown"); Pa.R.A.P. 1551(a)

13

the e-mails proffered at the hearing, which he maintains "clearly show work was done correctly, on time and with little or no comments from supervisors before being distributed." *Id.* at 11. Highlighting his status as a CPA with more than 30 years' experience and noting that he performed the same job for over 6 years without receiving a single "Unsatisfactory" rating, Burock contends that "all of [a] sudden" Employer deemed his job performance inadequate. *Id.* Burock asserts that he "laid out all of the reasons his supervisors could and did go after him with a vengeance." *Id.* Burock contends that his work was "never an issue" until 2017, when Seno was informed regarding Burock's interview in 2016 for another position. *Id.* Burock alleges that before his manager left in July 2017, Seno influenced her to give him a poor EPR on her last day.[15] *Id.* at 11-12. Burock further alleges that Burns, Seno's boss, dismissed this EPR several weeks later as "patently biased." *Id.* at 12.

Burock also casts various aspersions against his supervisors, including the accusation that two of his superiors committed fraud by utilizing "plugs" totaling roughly $1 million dollars in a September 2017 financial statement. Burock's Brief at 12. Burock alleges that he received an EPR in 2017 rating his job performance as "Unsatisfactory" in retaliation for reporting his superiors to the Pennsylvania Office of State Inspector General, Budget Director Randy Albright and Auditor General Eugene DePasquale. *Id.* at 12 & 14. Further, Burock asserts that he established

---

(with regard to review of quasi-judicial orders, "[n]o question shall be heard or considered by the court which was not raised before the government unit"); Pa.R.A.P. 2117(c) (the statement of the case shall confirm that issues were raised or preserved below, and shall include specific supporting references to the record); *see also Chapman v. Unemployment Comp. Bd. of Rev.*, 20 A.3d 603, 611 (Pa. Cmwlth. 2011) (issue was "waived for purposes of appeal" and "[would] not be addressed for the first time by this Court" where claimant failed to raise the allegation before the referee or the Board).

[15] Burock appears to reference former manager Jennifer Steigelman. *See* T.T., 9/25/18 at 24, S.R.R. at 25b; Comm'n Adj., 11/21/19 at 3, F.F. 6, S.R.R. at 357b.

through witness testimony that Seno fostered a hostile work environment. *See id.* at 10 & 14.

Employer counters that Burock fails to identify issues that fall within the Court's scope of review, asserting that the sole question *sub judice* is whether substantial record evidence exists to support the decision to suspend Burock for unsatisfactory work performance. Employer's Brief at 3 & 6-8. Further, Employer contends that the Commission "did not find dispositive or persuasive, any of [Burock's] evidence or testimony," and that Burock's evidence "did not refute . . . [E]mployer's testimony during the hearing." *Id.* at 10.

### B. Analysis

### 1. Good Cause

"The only requirement of the [Civil Service] Act with respect to disciplinary suspensions of civil service employees is that they be for good cause." *Shade*, 749 A.2d at 1057. Section 803 of the former Civil Service Act provided that "[a]n appointing authority may for good cause suspend without pay for disciplinary purposes an employe holding a position in the classified service."[16] *Former* 71 P.S. § 741.803.[17] The appointing authority bears the burden of proving that it had good cause to suspend a civil service employee. *Toland v. State Corr. Inst. at Graterford, Bureau of Corr.*, 506 A.2d 504, 506 (Pa. Cmwlth. 1986).

"It is well established that one's relationship with the classified service turns upon a merit concept." *Kanjorski v. Dep't of Lab. & Indus.*, 403 A.2d 631,

---

[16] Section 3(d) of the former Civil Service Act defined the term "classified service" to include various positions in certain government agencies. *See former* 71 P.S. § 741.3(d).

[17] Likewise, Section 2603(c) of Act 71 currently provides that "[e]mployees may only be suspended for good cause." 71 Pa.C.S. § 2603(c).

632 (Pa. 1979). Accordingly, "[t]his Court has held that good cause must relate to an employee's competence and ability to perform his or her job duties, . . . or must result from conduct that hampers or frustrates the execution of the employee's duties." *Bruggeman v. State Civ. Serv. Comm'n (Dep't of Corr. SCI-Huntingdon)*, 769 A.2d 549, 552 (Pa. Cmwlth. 2001) (citations omitted); *see also Kanjorski*, 403 A.2d at 632-33 (holding that merit criteria for evaluating disciplinary suspensions under Section 803 of the Civil Service Act "must be job-related and in some rational and logical manner touch upon competency and ability").

We discern no error in the Commission's determination that Employer demonstrated good cause to impose the July 2018 ADLS-1 on the basis of Burock's unsatisfactory job performance. The Commission's Adjudication is in accord with precedents of this Court sustaining disciplinary action taken against civil service employees under similar circumstances.

For example, in *Shade*, the Department of Transportation (Department) rated an employee as "unsatisfactory" in eight job performance categories. *Shade*, 749 A.2d at 1056. Roughly two years later, the employee received a final overall rating of "Unsatisfactory," despite exhibiting improvement in certain individual job performance categories. *Id.* at 1055-56. As a result, the Department disciplined the employee by imposing an ADLS carrying the weight of a five-day suspension. *Id.* at 1055. Upon the employee's appeal, his immediate supervisor testified at a hearing held by the Commission that he had provided the employee with a work plan containing 15 performance standards, and that he had conducted quarterly review sessions with the employee to discuss his unsatisfactory job performance. *Id.* at 1055. This Court determined that "[i]t [was] evident from the testimony and evidence that the Department had good cause to discipline [the employee],"

16

reasoning that an employee's "failure to follow through with his job responsibilities and his failure to meet the performance standards in his work plan, even after he had been advised repeatedly in performance reviews that his performance was unsatisfactory, constitutes the good cause contemplated by the Commission's rules and the case law." *Id.* at 1057-58; *see also Harper v. Dep't of Pub. Welfare, Phila. Cnty. Assistance Off.*, 553 A.2d 521, 524-25 (Pa. Cmwlth. 1989) (substantial evidence supported employer's just cause to remove employee, where employee failed to demonstrate significant improvement despite meeting regularly with his supervisor, receiving specific guidance and being afforded multiple opportunities for improvement).

Likewise, here, Employer presented ample evidence demonstrating Burock's failure to remedy his unsatisfactory job performance despite being offered multiple opportunities for improvement. As recounted in detail above, Employer provided documentary evidence as well as testimony from supervisors who regularly met with Burock and reviewed his work, establishing that Burock repeatedly failed to meet Employer's job performance standards, despite multiple opportunities for improvement. *See* T.T., 4/3/19 at 20-70, 89-91 & 101-06, S.R.R. at 21b-71b, 90b-92b & 102b-07b.

Burock maintains that he did not receive a single "unsatisfactory" EPR rating in approximately six years of employment preceding Employer's issuance of the ADLS-1. *See* Burock's Brief at 11. However, Burock's contention does not bear upon his unsatisfactory job performance during the rating period, which gave rise to the July 2018 ADLS-1. Likewise, Burock's assertion that reporting the alleged misdeeds of his superiors resulted in a retaliatory EPR in 2017 has no bearing on his challenge to the July 2018 ADLS-1 or his job performance during the rating

17

period. Regardless, Burock's mere allegation that the unfavorable EPR resulted soon after reporting his superiors fails to support his challenge. *See Gibson v. Dep't of Pub. Welfare Bureau of Child Welfare*, 434 A.2d 213, 214 (Pa. Cmwlth. 1981) (employee failed to establish that her reassignment within an agency resulted from filing an affirmative action grievance against employer, where "the only evidence [employee] submitted indicat[ing] that her reassignment was improper was simply the fact that she was informed of her reassignment shortly after she filed her complaint with the affirmative action office") (emphasis omitted).

Burock also asserts that the Commission failed to give proper weight to e-mails proffered at the hearing, which he insists demonstrate satisfactory work product. *See* Burock's Brief at 11. "It is axiomatic that the Commission, not this Court, has the power to resolve questions of credibility and to weigh the evidence." *Shade*, 749 A.2d at 1056 (citing *Toland*, 506 A.2d at 506); *see also Perry v. State Civ. Serv. Comm'n (Dep't of Lab. & Indus.)*, 38 A.3d 942, 948 (Pa. Cmwlth. 2011) (stating that "[i]n civil service cases, the Commission is the sole fact-finder"). "As such, determinations as to witness credibility and resolution of evidentiary conflicts are within the Commission's sole province, and we will not reweigh the evidence or substitute our judgment . . . ." *Perry*, 38 A.3d at 948.

This Court is not bound by credibility determinations of the Commission that are unsupported by substantial evidence. *Bruggeman*, 769 A.2d at 553. Here, however, Employer presented substantial evidence, as discussed above. Moreover, "[t]he fact that the Commission gave greater weight to the testimony of [Burock's] supervisor[s] than to the testimony of [Burock] is not an error or abuse of the Commission's fact-finding function." *Shade*, 749 A.2d at 1056. Further, Burock does not directly challenge the Commission's credibility determinations; he

merely casts unsubstantiated aspersions against his supervisors in an effort to undermine their testimony. *See id.* (disciplined employee "relie[d] on his own version of the facts as opposed to the findings as made by the Commission based upon its credibility determination," even though "[i]t [was] clear from the Commission's decision that it found credible the testimony from the witnesses of the [appointing authority], not [the employee's] testimony, where there was a conflict"). Accordingly, we will not disturb the Commission's credibility findings.

### 2. Discrimination

Next, Burock argues that Baker "favor[ed] another new Accountant 3, Dhanashree Chitnis (Chitnis) to the extent of allowing her to talk freely on the phone for approximately two hours per day for their first six months in [her] new job[]." Burock's Brief at 13. Burock avers that he reported Baker to her supervisor, Cameron, after which Baker was "furious" and provided Burock with "a horrible EPR within a few weeks of being outed to Cameron." *Id.* Further, Burock contends that the Commissioner refused to permit him to question either Baker or Cameron regarding Chitnis's purportedly excessive personal calls during working hours. *Id.* at 13. Burock also contends that Chitnis benefitted from "a ridiculously easy workload" and that he prepared a spreadsheet detailing the difference between his workload and hers, but that the Commission refused to enter the spreadsheet into the record. *Id.*

Employer counters that Burock failed to provide any evidence in support of his claim that Employer's imposition of the ADLS-1 was discriminatory. *See* Employer's Brief at 11.

19

Section 905.1 of the former Civil Service Act provided, in relevant part, that "[n]o officer or employe of the Commonwealth shall discriminate against any person in . . . any [] personnel action with respect to the classified service because of political or religious opinions or affiliations because of labor union affiliations or because of race, national origin or other non-merit factors." *Former* 71 P.S. § 741.905a. "Although the burden of proof for establishing a prima facie case of employment discrimination is not an onerous one, the burden nevertheless rests with the employee alleging the discrimination" to establish a prima facie case of disparate treatment. *Bruggeman*, 769 A.2d at 553; *see also Pronko v. Pa. Dep't of Revenue*, 539 A.2d 456, 461 (Pa. Cmwlth. 1988) (citing 4 Pa. Code § 105.16).[18] Satisfying this burden requires the production of affirmative evidence in support of the allegation; the Commission may not simply infer discrimination. *Id.* When claiming disparate treatment, a complainant must demonstrate that he was treated differently from other employees similarly situated. *Id.* If the complainant meets this burden, "the employer must demonstrate a non-discriminatory reason for its conduct." *State Corr. Inst. at Pittsburgh v. Weaver*, 606 A.2d 547, 549 (Pa. Cmwlth. 1992). A prima facie case of gender discrimination may be established by producing sufficient evidence that, if believed, indicates that more likely than not

---

[18] Section 105.16 of the Commission's regulations provides, in relevant part:

> The appellant shall go forward to establish the charge or charges of discrimination. If at the conclusion of this presentation, the appellant has, in the opinion of the Commission, established a prima facie case, the appointing authority shall then be afforded the opportunity to reply to the charges.

4 Pa. Code § 105.16.

discrimination has occurred. *Cola v. State Civ. Serv. Comm'n (Dep't of Conservation & Nat. Res.)*, 861 A.2d 434, 436 (Pa. Cmwlth. 2004).

Here, Burock essentially asserts that Employer engaged in gender-based discrimination by taking disciplinary action against him while purportedly permitting a female co-worker, who was also an Accountant 3, to make excessive personal calls during working hours and to benefit from a lighter workload. *See* Burock's Brief at 11. The Commission determined at the September 2018 hearing that the workload spreadsheet offered by Burock was not relevant to the question of disparate treatment, as it did not pertain to whether Chitnis received similar job performance ratings and yet was not disciplined. *See* T.T., 9/25/18 at 225-26, S.R.R. at 226b-27b.

We agree with the Commission that Burock failed to present relevant evidence in support of his discrimination claim. *See Pa. Game Comm'n v. State Civ. Serv. Comm'n (Campbell)* (Pa. Cmwlth., No 2308 C.D. 2007, filed May 7, 2008),[19] slip op. at 8 (testimony provided by employee's witness was not pertinent to employee's disparate treatment claim, where the testimony did not relate to whether employee's co-worker similarly received unsatisfactory job performance evaluations and whether employer thereafter imposed comparable discipline on the co-worker); *Cola*, 861 A.2d at 436-38 (employee "presented no evidence to demonstrate unequal treatment in the interviewing process" and, thus, "failed to carry his burden of establishing a prima facie case" where employee alleged that employer discriminated against him on the basis of gender in failing to accept his application for a different position); *Dep't of Health v. Nwogwugwu*, 594 A.2d 847,

---

[19] We cite this unreported opinion as persuasive authority pursuant to this Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a).

21

849-52 (Pa. Cmwlth. 1991) (employee, in challenging his termination under the former Civil Service Act as impermissibly motivated by discrimination on the basis of race and national origin, "failed to submit sufficient evidence of disparate treatment so as to meet his burden of persuasion under Section 905.1 of the Act," where he "introduced no evidence to compare his treatment with that of others similarly situated" and "failed to prove his individual allegations"); *Harper*, 553 A.2d at 523-24 (former employee terminated due to unsatisfactory job performance, who challenged his removal as impermissibly motivated by age discrimination, "failed to sustain his burden of establishing a prima facie case of discrimination" against former employer, where the Commission "found [his] unsubstantiated assertion not credible").

Moreover, we note that Burock fails to support either his challenge to Employer's imposition of the ADLS-1 or his claim of discrimination with citations to supporting legal authority in his appellate brief. *See* Pa.R.A.P. 2119(a) ("[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part . . . the particular point treated therein, *followed by such discussion and citation of authorities as are deemed pertinent*") (emphasis added); *Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) ("where an appellate brief fails to provide any discussion of a claim *with citation to relevant authority* or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived") (internal citations omitted) (emphasis added); *see also Shade*, 749 A.2d at 1057 (disciplined civil service employee failed to fully develop his argument by generally asserting without elaboration that his employer failed to assess each job rating factor in relation to established standards in evaluating his job performance).

22

For the foregoing reasons, we agree with the Commission that Employer satisfied its burden of establishing good cause to impose the July 2019 ADLS-1 on the basis of Burock's unsatisfactory job performance, and that Burock failed to provide evidence demonstrating that Employer's disciplinary action was discriminatory.

### III. Conclusion

For the foregoing reasons, we affirm the Commission's decision.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA


Frank M. Burock,               :
          Petitioner       :
                            :
         v.               :
                            :
State Civil Service Commission  :
(Office of the Budget),        :    No. 1865 C.D. 2019
          Respondent    :


O R D E R


AND NOW, this 13th day of May, 2021, the November 21, 2019 order of the State Civil Service Commission is AFFIRMED.


_____
CHRISTINE FIZZANO CANNON, Judge